The Honorable, the Judges of the United States, Court of Appeals for the Fourth Circuit. All right. Be seated, please. All right. The next case we'll hear this morning is United States v. Thompson. And Mr. O'Quill, we'll hear from you. McBeth. All right. Thank you and good morning, Your Honors. My name is Colin McBeth and I represent the appellant, Kyrie Thompson. Your Honors, Mr. Thompson challenges the government's decision to order Google without a warrant and in the absence of probable cause to copy and preserve the contents of two of his email accounts by depriving him of the right. Can I just jump in there? You said copy and observe. I understood they did copy it after the subpoena and put it in a file. But that before the subpoena, it's on their it's on their server. And they just barred him from deleting it. So it's already on their server now. All emails on their server. Yes. So before before Google received any process from the government, files were on their server. But what happened when the preservation letter was sent, Google went into wherever they store those files, made a copy and put that aside. I don't think they did that until they got the subpoena. I think they just put a order on barring deletion because it's already on their server. It is. And is there evidence in the file that they copied it separately at that point and set it aside? Well, that's that's certainly what we alleged in our district court filings. That's why I'm questioning you, because I didn't see any evidence in the record of that. It's inconsistent with my understanding. And so I just wanted to have record support for the fact that on the preservation notice, they made a copy as opposed to just barring barring the users access to it. They didn't bar access. They barring his deletion. Correct. So we're a little bit in the dark here because, you know, there was no record developed. But you seem to make a big deal about it. That's the only reason I jumped in, because the the preservation order basically means don't let the evidence be destroyed. Yes. But when the actual copying, they sent a letter saying we have put it into a file, they gave the number and certified it in their letter. And that's how the government gets it. Yes. But the way the government prevents it from being destroyed is by making a copy. So, well, that's on the subpoena because that's in the record that shows it. Google said they did it. Right. I'm talking about the preservation notice saying just don't let it be destroyed. Well, it's on their server already and all they need to do is leave it on their servers and not permit access to destroy it. Preservation means preservation. Right. So so we cite in this in this field Professor Kerr's article, which is sort of an overview of how this process works based on his discussions with companies like Google and Facebook and companies like that. And what the people at those companies tell him is the way companies respond to these preservation letters is going to the original underlying master copies of files, making a new fresh copy, putting that aside. And that is what the user cannot access or delete. The user can still go into his underlying files, delete those, but that doesn't matter. I didn't see that in the record. Well, so again, we're sort of in the dark here because we asked the government for a copy of the preservation letter. The government refused to produce it. The government also, when we stated this set of facts in district court, never disputed it. The government is the one, of course, who dealt with Google in this case and sort of counter indicated by the letter from Google that is in the file. But you can go ahead. The only point I raise that is you make a big deal under the Fourth Amendment and saying copying is a search or a seizure when, of course, the data is in their possession already. It's not that they didn't take it from anybody. What they did is they prohibited it from being destroyed in accordance with statute and spoliation aspects. That happens in the civil courts all the time, as you know, that you send preservation letters, tell people not to destroy documentation pending the filing of a lawsuit or the discovery in a lawsuit. Sure. And to be clear, we're certainly not contending that anything Google did prevented Mr. Thompson from accessing his account. That's not our claim. It's just that because the copy had been made at that point. You're not contending that it was anything improper of them asking for preservation. Well, we do. We think that's a seizure because when. Well, improper. Well, it's a seizure. That's a seizure without a warrant. Correct. A seizure without a warrant. I say it violates the Fourth Amendment. But you weighed that by pleading guilty. Well, so that's where I was actually going to start, Your Honor. So I think. OK. Let me just ask you something. Your client went in and pleaded guilty. Straight up. He did plead guilty, Your Honor. But we think this case is controlled by. Well, there's a provision in Rule 11 where you can get away with that. You can plead guilty and reserve the right to appeal a suppression ruling. But you didn't do that. Correct. We're not claiming to be clear that this was a Rule 11 conditional plea. What we're claiming is it was an unconditional plea that was invalid because the district court misadvised. So you want the plea set aside. Well, so we. That wouldn't give you a chance. That still wouldn't give you a right to challenge the suppression ruling. So two points, Your Honor. First of all, we think if you take the principles from the United States v. Mannegan and apply them to this case, they mean that Mr. Thompson can appeal that. Because what Mannegan said is if a district court affirmatively misadvises a defendant about the scope of his appellate rights, then the waiver is not. But the appellate rights. If a court misadvises a defendant of appellate rights, the appellate rights are not part of the guilty plea. They're part of what happens after the guilty plea is entered. In other words, you can appeal if the court said, in this case, you pled guilty. And we understand that. And you can appeal the suppression order. And we said, no, he couldn't. They didn't satisfy the criteria. The district court couldn't change our scope of review on appeal. But that doesn't go to whether the guilty plea is valid or not. That's just whether you can appeal it. So Mannegan is based on the validity, the knowing and volunteering. Yeah, but Mannegan is a conditional plea where we have an unconditional here, right? No, Your Honor. Mannegan was a plea in which the defendant expressly waived all rights to challenge both the conviction and the sentence on appeal. He waived all his appellate rights. But this is not a conditional plea. No, but not under Mannegan. Which means he cannot appeal the suppression ruling. That's just the way it is. I was a prosecutor and a defense lawyer for years before they had this Rule 11. And if you pled guilty, if you had a bad suppression ruling and you pled guilty, you waived it. And there was no, nothing in between. If you wanted to preserve it, you had to go to trial. And they changed it in Rule 11. They set it up so the defendant could do that. If the prosecutor agreed and they have a conditional plea, you can preserve the Fourth Amendment right and do it. But you've got to jump through the hoops. But that's the limit of it. Rule 11, what Rule 11 says. And if you don't have a conditional plea now, it's gone. So if you want this set aside, if we were to set it aside, that doesn't mean anything about a conditional plea. Yes, so two points, Your Honor. One is I absolutely agree that what you just described is the general default rule. And we've never claimed this is a conditional plea. But the plea in Manningham was also not a conditional plea. But there was a plea agreement in Manningham. There's no plea agreement here. There's no plea agreement here.  He pled straight up. That's what we used to call it. I don't know what you all call it now. But if you plead straight up, that's it. It's over. So it's all gone. Understood, Your Honor. Get a sentence and go. The principle for Manningham that I'm trying to apply here is that when a plea, when you give up certain rights to appeal by pleading guilty, if your knowledge of the scope of your appellate rights is erroneous because you've been misled by the district court and you are not limited. But there are no appellate rights. If you plead straight up, there's no appellate rights. You get a conditional plea, there are appellate rights. And you get the conditional plea by negotiating with the prosecuting attorney. Yes. By the United States negotiating with the U.S. attorney, he can agree to a conditional plea. You don't have that here. And we can't give you one simply by vacating the conviction, the sentence, and sending it back. That wouldn't help you a bit. So the… That's not going to do what you want. There were no appellate rights in Manningham either, though, is the point I'm trying to make. And nevertheless, the court reached the issue. That said, if the court thinks that Manningham doesn't apply and that this case is more like Fitzgerald, which is the case the government cites, then Mr. Thompson should at least get the remedy from Fitzgerald. But I think, and maybe I'm misinterpreting, but I thought in Manningham that the issue there was that there was an agreement and because the government did not object to the district court's, I guess, comment regarding the appeal, that was the issue in Manningham because there was no objection there and because there was a plea agreement. But we don't have a plea agreement here. Correct. There's no plea agreement here. The government, of course, in this case, did not object either when the district court misadvised Mr. Thompson. We can't give you a plea agreement by vacating these convictions. We can't do that. So if you don't have a plea agreement… He pled guilty straight up to five counts, I think it was. Two counts. Two counts, whatever it was. He pled guilty to the indictment. So if that's… And he didn't have an agreement. Correct. So he's under the old rule. And if that's the case, then his guilty plea was not a knowing and voluntary and intelligent plea. And what this court said in Fitzgerald is… I'm just saying, if we vacate it, then the vacancy doesn't get any relief with respect to this suppression issue. You want to argue the suppression. If the suppression is gone by the fact that he pled guilty, he doesn't have an agreement. So, Your Honor, if the court vacates the plea and sends the case back, Mr. Thompson will actually get some relief, which is that at that point he can decide anew whether to go to trial or plead guilty. And in this case, he has every incentive to go to trial because the first time he pled guilty, he got zero benefit for doing so. The district court did not grant him acceptance of responsibility. He knows what sentence he would get based on what the district court did the first time. And so at this point, he really has no reason not to go to trial or at least try to negotiate a better plea with the government. So there is meaningful relief for Mr. Thompson if the court vacates his plea agreement and sends it back. And we think if the court is not going to reach the suppression issue, that it should at least do that. But the suppression, Dr. DeRogan, is irrelevant to all this. And I'm saying… Yes, Your Honor. In my thinking… Understood, Your Honor. And I'm saying… But that's where you started out. And I'm saying… Talking about being able to suppress the evidence. And that was given up. Understood, Your Honor. And I'm saying, assuming that's true, the plea was still not a knowing and voluntary plea, which means it has to be vacated and sent back so that Mr. Thompson can decide anew whether to plead guilty or go to trial. So that's the remedy that the court gave in Fitzgerald. That's the remedy the court gave in United States v. Fundy, which is the case Fitzgerald relied on and cited and said, there are three options. Either the defendant entered a valid conditional plea, he entered a valid unconditional plea, or there was no valid plea. And if there's no valid plea, the plea has to be vacated. The court said use the word must. The plea must be vacated and sent back. So if the court believes that the suppression issue is… Well, he clearly knows there was no plea agreement. Correct. He didn't want a plea agreement. Well, there were negotiations that didn't work out. But in any event, there was no plea agreement. He didn't want a plea agreement. He pled guilty straight up. Correct. Straight up. And the consequences are? Consequences are?  Sure. Do I understand your argument to be that in the dialogue for the accepting the plea agreement, the court misinformed the defendant about his right to appeal? Yes. And that that, therefore, would have changed his wish to plead guilty? Yes. That means that when he answered that… And pleading guilty, he was relying on the fact that he could appeal the guilty plea? Yes, because the district court told him that. The district court said you have an unlimited right to appeal any issue, any ruling, not just sentencing, any other underlying ruling the court made in this case. So, and this court was very clear in Mannigan and other courts have said as well, that when a district court affirmatively misadvises a defendant, the defendant is allowed and entitled to rely on what the court tells him because the court is… So, you want him… Did you file a motion to vacate the plea? No, we didn't. We were asking the court to reach the Fourth Amendment issue. Were you there when this happened? I was, but I wasn't at counsel table. Oh, sorry, for the change of plea? I don't think I was at the change of plea. And none of the lawyers interrupted and told the judge, judge, you may be wrong on this? No, no one said anything. What about their obligation? What about, yeah, what about that? Defense counsels? Defense counsel, the prosecutor. Right, I don't know.  I wasn't there. They were standing there. Right, I wasn't there. Again, the government didn't object. I don't know, I can't speak for, you know, my colleagues who were taking the plea with the client. But in any event… Did you know that he didn't have a right to appeal anything? You were… So, I know… You were in the courtroom, you said? Not for the change of plea. Somebody should have piped up and said, judge, this is a straight-up plea. So, I was not in the courtroom for the change of plea. The rule 11 doesn't apply. And, again… Black and white. If the court says that, then that means, still, that Mr. Thompson's plea was not a knowing and voluntary plea because, as the court said in Mannegan, when a court affirmatively misadvises, it's not just a failure to advise, it's an affirmative misadvisement. And when that happens, the waiver of your appellate rights is not knowing and voluntary. And so, under… The waiver of the appellate rights. Correct. There wasn't any waiver of appellate rights. Well, whatever… There wasn't any waiver. There was a no agreement. Sure. There was a no plea agreement. Whatever. What happens when you have a straight-up plea? You plead guilty. I'm guilty, Your Honor. There's a factual basis for it. I know what the penalty is. Correct, Your Honor. And I understand what's going to happen. Correct. But, Your Honor, every plea must be knowing and voluntary. There's no exception for unconditional pleas to the knowing and voluntary rule. The validity of a plea is required in every case. So, if the plea was not knowing and voluntary, the court must vacate the plea and remand so Mr. Thompson can decide anew whether to plead guilty or go to trial. That is the position I'm taking at this point. I can tell the court is not interested in reaching… Was he told by his own lawyer that he could appeal? I don't know the answer. In the letter that was filed before the change of plea, the attorney said they had discussed his appellate rights with him. We acknowledge that. That was also true in Manegan. In Manegan, the defendant had had a conversation with his lawyer about his plea agreement and said he understood it. And, nevertheless, this court said, because the district court affirmatively misadvised Mr. Manegan about those rights, the plea was not a knowing and voluntary plea. But this case is distinguishable, once again, because there's a plea agreement and I think in Manegan, I think there's King voted, but the issue there is that the government did not object to the incorrect advisement by the district court. And so I think, in that opinion, they said it's acquiesced because the government didn't. And then that's why, in Manegan, the court said you could go back and change it because there was no objection by the government. Right. And so that distinction is relevant to whether or not Mr. Thompson can appeal the Fourth Amendment issue. But it's not relevant to whether the plea was knowing and voluntary. Every plea, whether conditional or unconditional, must be a knowing, voluntary, and intelligent plea. There's no exception to the validity requirement for unconditional pleas. Now, what's our standard of review for this? What sort of error have you got? The question of whether a defendant waived or gave up whatever word the court wants to use, abandoned his right to raise issues, is de novo. Well, we've got a case, Martinez, you know, maybe that one? I don't think so, Your Honor. In 2002, if the district court erred in a Rule 11 colloquy, but the defendant did not seek, in that court, withdraw his guilty plea on the basis of Rule 11 error, the Court of Appeals reviews for plain error. So that's not what this court did in Fitzgerald or Bundy. The court said the plea is invalid, therefore we have to decide what the proper remedy is. When was Fitzgerald? Fitzgerald was 2016, I believe. So this would be before that. Okay, I don't know, Your Honor, except that in that case and Bundy, which were both published decisions, the court, you know, did not, there was no motion to withdraw the plea. In those cases, the court nevertheless said, once we determine there was an invalid plea, we have to determine what the remedy is. And if there was no valid plea entered at all, we must, again, must vacate the judgment and remand the district court. But in this case, we found it important that nobody tried to correct the judge. Yes, Your Honor. So I can't speak to, you know, why Fitzgerald or Bundy did not address those cases. But those cases both said, when someone, you know, raises an issue that he thinks he's proven. So your request here is for him to withdraw, to have the conviction vacated, not to give him a right of appeal. Correct, I mean... You don't, you're not interested in an appeal right on the suppression. Well, it was 20 minutes ago, but I can tell at this point that the court is not going there. So at this point, yes, the remedy... Well, let me ask you this just on that point. If your guilty plea is vacated, it has to go back for another guilty plea, right? Correct. And during that guilty plea, would you then reserve the right to... I don't know. ...challenge a suppression? That would depend on the course of negotiations with the government. We have not gotten that far yet, so I don't know. We'll go back for the trial, if you want the trial. And I think there's every reason that... Yes, I think there's every reason Mr. Thompson would want a trial, because again, he pled guilty the first time and got zero benefit for it, because he did not get acceptance of responsibility at sentencing. So he has zero incentive to just plead again. He would like a trial at this point, or to at least be able to negotiate perhaps a slightly better deal with the government. So there's absolutely a meaningful remedy to Mr. Thompson if the court vacates the guilty plea here, which is, again, what the court said it must do in Fitzgerald and Bundy when there's no valid plea. And there was no valid plea here because the district court affirmatively misadvised Mr. Thompson about his rights. If I could, I'd like to very quickly discuss the Rogers-Singletary issue, and in particular the question of Mr. Thompson's duty to report. First of all, I think Sisson and the cases that apply it, Williams and Reyes, say that if two conditions are different on their face and the government argues that they're actually the same, then as long as the defendant contests the government's explanation, this court will find Rogers-Singletary error, which is what happened here. The government says these conditions, which are facially dissimilar, are actually the same. We contest that. Under Sisson and Reyes, that's enough to resolve the issue. But even if the court doesn't believe that's enough, we maintain the court should reverse because our interpretation of these two conditions is the better one. So the government tries to show that the district to which someone is released and the district where they're authorized to reside are the same by looking at a 1995 Memorandum of Understanding between the BOP and probation and an AO internal document. At most, even if you read those documents for all their worth, the most they show is that in BOP's mind and probation's mind, those two districts are the same. But that is not how this court interprets supervised release conditions. We don't ask, what does probation think the term means? What does the BOP think the term means? The court doesn't even ask, what does the district court think it means? The question is, what would a reasonable person speaking normal, ordinary, everyday English understand the conditions to mean? And I think to me it's obvious that when a condition says the district to which you are released, it means the district that you are in when you step out of prison. So in this case, that would be presumably New York where Mr. Thompson is now. And that is not the same as the district where he would be authorized to reside when he goes on supervision. So even just looking to the plain, ordinary language of those conditions, they're not the same. Because a reasonable person does not read a 1995 Memorandum of Understanding. Well, I understand these two conditions are both in writing and both in the standard conditions adopted. Well, one is sort of in the introduction to the list of conditions. And then one is under the standard. Yeah, but they're both in writing and they're both in the conditions adopted. Yes, yes. And they're standing conditions in the district. So, no, only one of them is in the list of standard conditions that... I mean, the language you're talking about was, is that taken from the standard conditions? Well, one of them is. One of the two in the judgment is. I forget which one. But one of them is from the District of Maryland's standard conditions. But the other is not. The other doesn't appear anywhere in the standard conditions. So they're... Which is which? What appears in the standard conditions? The standard conditions, I believe, which were the ones incorporated at sentencing, talks about the duty, the district in which you're authorized to reside. And then the judgment does have that, but it also adds the district to which you are released. It says both, which is the same error that was in... How is it connected to? Or? No, they're just in separate paragraphs. I know, but you said... It's not a disjunctive or anything. They're just two separate, unrelated parts of the judgment. This is the same error that was in Sisson, Williams, and Reyes. And in Williams and Reyes, the court did reverse. And in fact, in Williams, the government cited the exact same sources that the government cites here to argue that those two conditions are different. All right. Why don't we hear from the government? Thank you, Your Honor. Good morning, Judge Niemeyer. May it please the court. David Bornstein on behalf of the United States. This is an easy case, or at least it should be. Mr. Thompson raises two points. Well, it should be, but it's gotten a little bit involved, so you might as well drop the easy part and let us get to it. Let me begin by saying      Mr. Thompson's Fourth Amendment claim of error and why it has been waived. Now, the defendant has conceded throughout these proceedings that he pleaded guilty unconditionally. He realizes that. He concedes it on pages two. Well, he wants the plea set aside. Yeah, that's my question. I thought he gave up on the suppression. So... It's not a conditional plea. Yes. And so he can only get the plea set aside if he did not knowingly plead guilty unconditionally. Well, what did the judge told him that he had a right of appeal? The judge told him that he did not... So, let me get to that, Your Honor. Let me explain why it is that Mr. Thompson... That doesn't mean what it says. The judge told him he had a right of appeal. The judge told him... You can get anything you want, but the judge told him he didn't have a right of appeal. And they said they'd disadvise. Now, that doesn't get him a suppression plea. No, Your Honor. Let us jump to what the judge said. That is page 403 of the joint appendix. And before I tell you what the judge said, I just want to put it briefly into context. What the judge was doing was complying with criminal rule 11B1N. Now, under that part of the criminal rule, the judge is supposed to, and let me quote it to you, apprise the defendant of, and I quote, the terms of any plea agreement provision waiving the right to appeal. But he didn't have a plea agreement. He did not, and that's what the judge told him. The judge said, now, I do want you to know that you're pleading guilty without an agreement with the government, so you are not giving up any rights of appeal. And that is true in the sense that normally when a person pleads guilty unconditionally, it renders irrelevant, as Your Honors know, any pre-plea constitutional error, any non-jurisdictional error. Well, now, let's just, I understand all that.  That's easy to say, but the question is what he was told and what he was entitled to rely on. Yes. The court says, now, I want you to know that because if you are pleading guilty without an agreement with the government, you are not giving up any rights of appeal. In other words, at the sentencing, you will be able to appeal any sentence that is imposed or any other underlying ruling that the judge made in the case.  Because you are not giving up your right of appeal. Yes. Now, the judge did make a ruling in the case on the suppression. Yes. The question is, is he entitled to rely on that in pleading guilty? Well, I think the question, so the first question is what exactly did the judge tell him? Just read it out. And so if you look at those... That's wrong. No, it is not, Your Honor. So first of all, it is correct he didn't have a plea agreement with the government. It is correct that he did not have an appellate waiver. And the judge then tells him, at sentencing, you're able to appeal any sentence that's imposed or any other underlying ruling that the judge made in the case because you're not giving up your appellate rights. But he doesn't say it. He says that the judge made in the case. Yes, Your Honor. Because you are not giving up your right of appeal. And my friend... And that's because there was no plea agreement. So the court concluded because there's not a plea agreement, you can appeal anything. And I think my friend, on page 6 of his reply, calls that a legally incoherent statement. The government does agree that it requires construction. But we think the best construction of the statement was the judge was simply telling Mr. Thompson that because he did not enter any appeal waiver, he could still bring a sentencing claim on appeal, which is always true once a person pleads guilty. Well, now the court says again at 408, now as I understand, I mentioned, because there is no plea in this particular case, the plea agreement in this particular case, whatever sentence is imposed does not restrict your right to appeal that sentence if you believe that there's a basis for doing so. Absolutely. Of course you can appeal the sentence. And I want to point out, you know, look at my friend's opening brief. The defendant never says at any point in that opening brief that he believes that he thereby retained the right to appeal the suppression order. It said any ruling in this case. Said any ruling, but again, I believe that the best... Suppression ruling was a ruling. But the best construction... In this case. Yes, Your Honor, but I think the best construction of that is when the court says you're allowed to appeal the sentence or any underlying ruling, it is any underlying ruling applicable to the sentence, like a guidelines calculation. And I want to point out, look at my friend's opening brief. He never says that Mr. Thompson... Well, I think that's probably what the court intended to say. And that's why... What you're saying, because it's... Yes. You can appeal the sentencing, but there's a little bit of a slip in there. And I don't think the slip led to any misunderstanding of Mr. Thompson's part. Page 28 of my friend's opening brief is the only sentence I could find where he tries to say what Thompson understood from it. And this is what my friend has. Page 28. On these facts, where the district court advised Thompson that, quote, he's entitled to appeal his sentence, Thompson can hardly be said to have knowingly waived his right of appeal, close quote. That is the only sentence my friend has in his brief about what Thompson understood, and we agree. He was told he's entitled to appeal his sentence. And that is what Judge Grimm told him. There is no basis here to believe that the defendant thought he had reserved the right to appeal the suppression ruling. So you're saying he had a right of appeal? Yes. So when a person... Wait, how do you get a right of appeal if he pleads unconditionally? As you know, Judge King, even when a defendant pleads guilty unconditionally, a straight-up plea, he can still bring a sentencing claim on appeal. He can challenge his sentence. And also under the Black Ledge Mena Doctrine, he can still... This is class against the United States, the Supreme Court decision from 2018. He can still bring any jurisdictional pre-plea claim. For example, anything that says that the government cannot hail him into court, like a double jeopardy claim, like a facial constitutional challenge to the statute of conviction. Those are claims that he can still raise on appeal despite an unconditional plea. So what Judge Grimm told the defendant was correct. He didn't have a plea agreement. He wasn't waiving those rights. Can you appeal without preserving them? Sorry, Your Honor? Can you appeal those claims without preserving them with the court and make motions to that effect? Yes, that is class against the United States again, Your Honor. The 2018 decision that Justice Breyer wrote for the Supreme Court explaining that despite entering an unconditional plea, in that case, the defendant could bring a second-minute challenge to his statute of conviction. And the idea was that that was a jurisdictional claim. He's here properly. He can appeal. Well, no. He cannot appeal the suppression claim because the suppression claim, Your Honor, is a non-jurisdictional pre-plea defect. That is this court's decision in Lozada. But I really want to hone in on why the defendant's guilty plea here was knowing and why he cannot, for the first time at oral argument, claim that it was unknowing and thus he should get his plea back. I want to make that clear. Look at his opening brief on pages 2, 24, and 29. He repeatedly concedes that he knows he entered an unconditional guilty plea. Again, on page 3 of his reply brief, he concedes that he knows he did not enter a conditional plea. And then look at what happened below. Before pleading guilty, the defendant wrote a letter to the district court stating that he knew that by pleading guilty he was, quote, giving up the right to appeal any pre-trial decisions about evidence. That's Joint Appendix, page 383. And in fact, look at my friend's reply brief, page 7. He says that the defendant thereby acknowledged that he was, quote, knowingly giving up his right to appeal suppression. Behold it against him what his lawyer said in the brief? Yes, absolutely, Your Honor. I think given the fact that throughout the record and in the briefing, the defendant repeatedly says he knew that he was giving up the right to appeal the suppression ruling, that he cannot even get himself in the opening brief or at any place that I can find to say that the defendant actually thought he had reserved the right to appeal suppression. If you look through it, you'll cite case law. But the one time where he says this is what Thompson thought, it's on page 28. And it simply says he was informed of the fact that he could appeal his sentence. And I think that is the correct understanding of what Judge Grimm said on page 403 of the Joint Appendix. Well, I suppose you get some confirmation of that at 408. Yes, absolutely, Your Honor. When he read it correctly, as opposed to 403, where he slipped in that word in this case. I suppose he meant the sentencing in this case. But that's probably what he intended. But it is a little awkward. Well, again, Your Honor, we do not believe that that one awkward moment can overcome the defendant's clear acknowledgments in the letter before the court at Joint Appendix 383. I would also point out that on Joint Appendix page 402, the court spent pages telling the defendant of the rights he was giving up by pleading guilty. You can start on page 395 and then jump to page 401. And the court tells the defendant, if you had proceeded to trial, you would preserve the right to appeal any pretrial decision that you thought was erroneous, but by pleading guilty, you are waiving that right. Do you understand that? That's pages 395 to 401. And on page 402, the defendant says, yes, he understands. Why is this? He brings up Fitzgerald. How is this different than Fitzgerald? It is not. What my friend is trying to do here is create another avenue beyond the conditional plea context for defendant to raise suppression claims after pleading guilty. And Fitzgerald completely forecloses that argument. In Fitzgerald, the district court actually told the defendant, I believe the exact words is that, you have certainly retained the ability to appeal the suppression ruling. And this court said, despite the court saying that he certainly retained that ability, if there is no conditional plea, there is no ability to appeal that. So my friend was trying to say, well, despite doing an unconditional plea, my client should still be able to raise a suppression claim. That is wrong and foreclosed by Fitzgerald. Now at oral argument, he's saying for the first time, well, despite having always said that my client knew it was an unconditional plea, despite all of his representations to the court that he realized that he was giving up his ability to appeal the suppression ruling, now that he sees that his claim of error is not going to pan out, he wants to claim that his guilty plea was invalid. It is too late to do so. He cannot do that at oral argument. In his reply brief, to be fair, on page three of his reply brief, he says, well, you can construe some of my arguments in my opening brief as claiming that I did not knowingly enter an unconditional plea. But look at the arguments he cites. Each and every one of them says that he did not enter, knowingly enter an appellate waiver. And the government agrees. He had no appellate waiver here because he had no plea agreement with the government. He did not waive his rights to bring a sentencing appeal. He did not waive his rights to bring any sort of challenge under the Blacklege metadoctrine, those facial constitutional challenges, those double jeopardy challenges. What he did do by pleading guilty, this is a Supreme Court's decision in class against the United States, is he rendered irrelevant and thus prevented himself from appealing any pre-plea constitutional error that did not fundamentally go to the jurisdiction of the court. How do we handle the judgment? I would like to now turn... The two languages, the residence and district of release. What should we do there? So, as this court set forth in Mathis and actually just last week in a new decision called Turner, if you'd like me to follow Tony at GA, I will, a Rogers error is only error if there is a material discrepancy between the two descriptions of the supervisor release terms. Yeah, but these aren't... Both of these are in the written judgment, right? Yes, they are, Your Honor. Okay, so... And they're both written there and they seem to be intentional with each other, right? Only on their face. Only on their face. There are about as much intention as saying, you know, meet me in Richmond, meet me in Virginia's capital. Those are two different descriptions of the same place. If he's released now, he would have to report in New York, right? No, Your Honor. My friend completely ignores release planning. So, what the government has done is we've produced documents from the Bureau of Prisons and also the Probation Department and also the Administrative Office of the U.S. Courts showing that the district to which a defendant is released is also the district to which he's authorized to reside in. And... Your Honor... You mean the release is a physical document that he gets? When he's released, does he get a physical document that says you're released in this state but report to the state of your residence? What we're saying, Your Honor, is the BOP does not simply let an inmate out the front doors of the prison and send you now 72 hours to get to wherever you need to go. That's not what happens. The BOP actually transports the defendant to the district in which he is going to be supervised, to which he's authorized to reside. That is the district he is released in and that is made clear through the documents that the government has put forward, which this court can take notice of. So, you're saying that under BOP regulations, the language that says the district in which he's released doesn't refer to where he walks out of the gate but where he's transported after his incarceration is finished?  It is that he's not released out of the gate. The BOP... So, for example, the BOP generally, in most cases, before defendant is released, they allow him to complete his or her sentence on home supervision or the person is allowed to enter a residential reentry center. Both of those places are going to be in the district in which he is authorized to reside. Now, if... Which is that? Is that Maryland in this case? In this case, I'm not sure that the defendant actually has a release plan yet. What will happen is the defendant is currently serving a 30-year sentence. Once he starts to near the end of that term, he will file a release plan where he sets forth where he would like to reside. BOP and Ropation then work together on how do they get him there. Ideally, he will be allowed to spend the last six months of his sentence, again, in either home confinement or at a residential reentry center. Or if there's no suitable place to put him, these are the documents we put for the BOP memorandum, he can be placed in a local or state jail so that he will be released from there. The point is, Your Honor... So you're saying release is a term of art not where he walks out the gate but where he is released by the Bureau of Prisons, which is the place of his authorized residence. And I'm actually saying, Your Honor, he doesn't... When he will walk out the gate, it will be from a facility in the District of Supervision. So the defendant right now is in New York. I think... I'll put it this way, Your Honor. I think it is telling that my friend, despite there are now years of litigation as to whether the District of Release and the District of Authorized Residence are the same, despite the government, in case after case, putting forward evidence that they are actually the same. Indeed, my friend stood up here and said, If you look at the BOP and probation documents, they show that they are the same in the mind of the BOP. And in probation, well, that's meaningful because BOP is the government agency releasing the defendant. And if the BOP is releasing the defendant into his District of Supervision, into the district where he's authorized to reside, they are one and the same. My friend simply responds saying, Well, you know, it's almost like a movie. Imagine the prison gates open, the defendant walks out, and he's told, Okay, you're being released from New York State. You live in Alaska. There's actually a big array of press there taking pictures and stuff. Yeah, right? It's fictional. So your position is that he will not be released in New York. He may be transported from New York to where he resides. He would be brought to a detention center in Maryland, or he'd be put into home confinement in Maryland, or he'd be put into a residential re-entry center in Maryland. The government has come forward with documents showing that. I just want to quickly quote from the BOP, the joint memorandum of understanding between the BOP and the Probation Department. We cite it. He may effort to conform the judgments to what you're going to tell us. What do you mean, Your Honor? Well, they're saying that what happened at the hearing is inconsistent with what's in the written judgment. So that's what they call the Rogers error. Yes. Okay. You're trying to explain the Rogers error because of what the BOP writes down. And not only that. The judgment is what needs to say what the judge said, and the judge needs to say what the judgment said. And I'd like to point out, Your Honor, look at Joint Appendix page 510. Both of these descriptions of the condition exist on the same template that the District of Maryland uses in every sentence. In every sentence, it describes the condition twice, but they mean the same thing. Within 72 hours of your release... If I understand you, the word release is where the BOP releases him. Yes, Your Honor. Not where he last served in jail. Exactly. And the place he's released is always the place he's authorized to live. Yes, Your Honor. And we have come forward with documents showing that, the BOP and probation joint memorandum, the Administrative Office of the U.S. Courts own overview of these guidelines. I'd simply point out, if I may quickly, the BOP memorandum. It says, under district of supervision, offenders should be released to locations where they have the greatest likelihood of a successful community adjustment. Thereby showing that the BOP... That all sounds great, but the point we're concerned with is what the judgment says as opposed to what the judge says. And somebody has a responsibility to get the order right. Sure, and let me clarify... And you're one of the lawyers in the case. And let me clarify. So the two descriptions are the same, Judge King. The two descriptions, because the district of your release is also the district in which you're authorized to reside. Why can't they say it's the same term? I don't have... It would... You don't have to come to Richmond to try to explain it to three other judges. It would definitely simplify things, Your Honor. It would. But, when it comes to a Rogers error, this court is clear that only a material discrepancy matters. And I believe the onus is on the defendant as the one seeking relief to show there's a material discrepancy. This court should reject the argument of the defendant he says under this court's unpublished decision in Reyes. He simply has to object to the government's reading despite all the evidence we bring forward. He just has to say, I contest it. And that is a Rogers error. If that is true, and given the fact that the District of Maryland, every single judgment has these two descriptions of the same condition in it, I would argue that the fact that they are both together shows that they are one and the same. It's also not perfect, Your Honor. The Fifth Circuit, in a series of decisions, I'll quickly cite them to you, Your Honor. U.S. against Ham Dooney, 2021, Westlaw 557-9267, U.S. versus Williams, 2022, Westlaw 636-681. Which circuit? The Fifth or First? The Fifth Circuit. The Fifth Circuit has... But they do it differently, do they? No. They go to see whether or not these two descriptions are different. And the Fifth Circuit has determined, based upon the evidence that the government has put forward, same exact evidence the government has brought forward here, that the two descriptions refer to the same district. Because the district to which you're released is the district to which you're authorized to reside. And I find it deeply telling that my friend doesn't bring forward anything to support his reading, except this sort of fanciful notion that the BOP... So I'm asking you why the court and the lawyers can't get the two things consistent with one another. And my answer is... You're saying they have consistent meanings, but Judge King has pointed out they have different words. Yes. They better have consistent words. Yeah, they do. They have consistent meanings. They are different words. It definitely would simplify things. Maybe the U.S. Attorney needs to talk to the chief judge or the probation officer or somebody. Yes. It's a matter of drafting the order, I guess. Or the standard conditions. Whatever you want to call them. I think that... The one you're dealing with. It's not going to be too difficult. There would be no question, Your Honor, that there is no Rogers error here if the district court simply eliminated the description of the condition. Don't blame it on the district court. I'm not going to actually blame it on the district court. I think I'm going to blame it on everybody involved. I mean, particularly the lawyers. I think the responsibility is on the prosecutor and the defendant.  Your Honor, if I just may say... The same thing with this other issue on the plea agreement. No plea agreement. You just send a letter to the district court chief judge and tell them to make the language consistent and it will save appeals. And when it's wrong, you make a motion to amend it. And fix it. There's something else. I'll point on Judge Niemeyer. We can come to Richmond and argue about it. I was at a resentencing last week where I pointed out to the district court that there were these two descriptions of the same condition and that there had been a lot of litigation about them being inconsistent. Judge Berdar in the District of Maryland said, well, they describe the same district. They're one and the same. But that's in the context of a case. You need to write a letter independent from the case to be neutral. But the most important thing here is it is not enough for my friend to come up here and say producing no evidence, producing nothing that shows that these two are different, the mere fact that he contested is enough. The onus is on him to show why the government's reading is wrong and he has not done so. All right. Thank you, Your Honor. We ask you to affirm. All right. Thank you, Your Honor. A couple points. First, on the guilty plea, the government says that in our brief, we said that Mr. Thompson knew that he was not preserving his suppression rights. That is absolutely not true. Well, just let me take you to something that I didn't bring up a little earlier, but it's part of the calculus. On page 399, the district court told the defendant this. In addition, during or before the trial, your lawyers could have filed a motion to say to try to limit the evidence the government would produce and the judge would have to rule on whether that could be heard when the government finishes its case and say we don't have any more evidence to offer. We're done. Then, with the assistance of your lawyers, you would be required to make a decision and you basically would have two routes to go from that point. That motion to limit the evidence, the court then says a couple of pages later, you're giving that up. Do you understand? And he says yes. And then you go back to 408 and the court explains the right to appeal is related to the sentence. The place you rely on is 403 where it has the one phrase in this case, but I'm wondering whether when the fellow is told that all your motions to limit the evidence, you're giving that right up. And he says yes, I know. So I don't think that's actually what happens, Your Honor. So Judge Grimm reads through all these things that the client could do if he goes to trial and he says do you understand what it means to have those rights, meaning you understand that if you go to trial, you can do those things. And he says yes. Well, it says also the motions made, could file motions to say to limit the evidence. Right. Before say, during or before trial. The court says that.  And you filed a motion to suppress, which is a motion to limit evidence. Yes. The district court though, what the district court told Mr. Thompson was if you go to trial, you will have that right. It didn't say that. It says if you don't plead, I mean when you plead guilty, the court said you're giving up that right. It didn't say you don't have that right. It said in addition. And then it said all right. And he goes through this whole thing and said you're giving up all those rights, you understand. And he said yes. So if you're referring to the bottom of page 402, which I think you are, Your Honor. No, it's 399. Okay. Well, on 402, which is the one that immediately precedes page 403, the court says when you plead guilty, you give up these important constitutional rights. And immediately before that, the court is talking about three specific constitutional rights. The right not to incriminate yourself, the right to confront witnesses, and the right to have a jury trial. And he says, do you understand that you give up these constitutional rights when you plead guilty? But appealing is not a constitutional right. There is no constitutional right to an appeal. But anyway, even if the court thinks that that statement on the bottom of 402. Well, you missed the top of the page. This is after he explains the motions. The court says, do you understand what it means to have these rights that I've just explained to you, sir? Defendant, yes, sir. All right. Now, why am I going through all of that with you? Well, it's because when you plead guilty, you give up these rights.  I mean, that's not down there. He's talking about a different thing. It's just as clear as a bell in my judgment that the motions to limit evidence was explicitly told to him that he would be giving it up. Well, so two things. One, I think the court, after that part you just quoted, transitions to a separate set of rights that he's talking about. But even if you disagree on that, Your Honor, when we get to page 403, the language is, in my mind, extremely clear. It says, you are not giving up any rights of appeal. The government tries to say that that's ambiguous. I don't see how that can be ambiguous. If the court says you're not giving up any rights of appeal, and you will be able to appeal any sentence that's imposed or any other underlying ruling, in other words, not just sentencing rulings, any other underlying ruling. The court said, in other words. When you took that language, it said, not giving up any rights of appeal. In other words, at the sentencing, you'll be able to appeal any sentence that was imposed or any other underlying ruling. And that underlying ruling should be construed to be the sentencing that the judge made in the case because you're not giving up your rights of an appeal. Well, Your Honor, then there'd be no reason to use the word other. And then look at 408. The court says, as I just mentioned on 408. Well, the court did also mention the right to give up the appeal of sentencing. So it's talking about both. And the court said it again at the end of the sentencing. Well, what the court said at the end of the sentencing is you have an unlimited right to appeal. And then at sentencing, the court again said you have the right to raise any appeal you want. So at most, I think the transcript is ambiguous. And when that's the case, the cases we cite in our reply brief from the D.C. Circuit and the Tenth Circuit say it's ambiguous. You construe the waiver narrowly. And so that means the plea is not knowingly involuntary. Okay. What waiver? I'm sorry? Waiver is being construed narrowly. There were no waivers.  Let's put aside the word waiver. I think you better get the sentence out. Ability to enter the plea knowing that you won't be able to appeal, that is not a knowing decision. Maybe we should review for plain error. Well, the government hasn't even suggested that you review for plain error. And again, Fitzgerald and Bundy are very clear that it's a de novo review. The court just decides what the remedy is and does it without dwelling on the fact that the defendant didn't file a motion to... Well, it's going to be de novo. The counsel would have to frame it in the proper manner of the issue. And the way you framed it, it all had to do with the appeal of the suppression. But the reason that I was arguing the court... And you say today that that doesn't have anything to do with it anymore. Well, I'm saying I realize the court is not going to go in that direction. And so the reason that I thought the court and still think the court can get there is that the plea was not knowingly involuntary. And the government stood up a second ago and said that we never said in our review... I think we understand.  We're past the red light. We've given a little more time on this case than we had assigned. We'll adjourn court for the day and then come down and greet counsel. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Robert B. King, DeAndrea Gist Benjamin